583 P.2d 1011

In the Matter of the Interest of Steven Wolf, a child under 18 years of age.

Steven WOLF, Appellant,

v.

The STATE of Idaho, Respondent.

In the Matter of the Interest of Rory Brooks, a child under 18 years of age.

Rory BROOKS, Appellant,

v.

The STATE of Idaho, Respondent.

Nos. 12633, 12634.

Supreme Court of Idaho.

July 27, 1978.

Rehearing Denied Sept. 19, 1978.

Charles F. McDevitt, McDevitt, Pursley & Webb, Boise, for appellants.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., David H. Leroy, Ada County Pros. Atty., Boise, for respondent.

SHEPARD, Chief Justice.

This is a consolidated appeal from orders waiving juvenile jurisdiction as to appellants Wolf and Brooks, who are juveniles and accused of committing first degree murder. The effect of the waiver orders is that the State may prosecute the appellants as adults. We affirm.

One Enrico Flory was murdered on June 3, 1976, at which time appellant Brooks was 17 years of age and appellant Wolf was 15 years of age. Appellants were charged with that murder. Petitions requesting the waiver of juvenile jurisdiction as to appellants in connection with these charges were filed on September 9, 1976. Separate hearings as to each appellant were had on the waiver petitions. At each of those hearings the county prosecutor testified that there was probable cause to believe that the appellants had committed the murder. The magistrate held that the right to cross-examine did not attach on the determination of probable cause in the waiver setting, and hence, appellants' counsel was not permitted to cross-examine the prosecutor. Thereafter, the magistrate found probable cause.

Findings of fact and conclusions of law were entered by the magistrate in separate orders waiving juvenile jurisdiction. *See State v. Gibbs,* 94 Idaho 908, 500 P.2d 209 (1972). The magistrate concluded that each appellant was an anti-social sociopath, but not mentally incompetent. *See State v. Powers,* 96 Idaho 833, 537 P.2d 1369 (1975), cert. denied, 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969); *State v. White,* 93 Idaho 153, 456 P.2d 797 (1969). The magistrate also concluded that the prognosis for improvement of each of the appellants was unsatisfactory and that the condition of each of the appellants would likely continue beyond the age of 21 rendering the appellants dangerous to the public beyond that age. Juvenile jurisdiction for rehabilitative treatment terminates by law when the person reaches age 21. I.C. § 16–1805. *See* Schroeder, Developments in the Enforcement of Parental and State Standards in Juvenile Proceedings, 10 Idaho L.Rev. 153 (1974). *See also* Note, Problem of Age and Jurisdiction in the Juvenile Court, 19 Vand. L.Rev. 833, 837–49 (1966). The magistrate concluded that each had shown an escalating propensity for violent activity. Each appellant had previous juvenile adjudications of record and in the interval between the murder of which they are accused and the filing of the petitions, appellants had participated together in rape and two kidnappings. The magistrate also concluded that each appellant had failed to respond to rehabilitation, that they were emotionally and mentally mature, that they could not benefit from juvenile facilities available in Idaho and that they would likely disrupt the rehabilitation of other juveniles in those facilities.

As to appellant Wolf alone, the magistrate held that I.C. § 16–1806(1)(a) was in conflict with I.C. § 18–216. Section 16–1806(1)(a) did not authorize the waiver of jurisdiction over a juvenile who was between the ages of 14 and 16 at the time of the act of which he is accused. I.C. § 18–216, however, authorizes the waiver of jurisdiction over any juvenile between 14 and 18. In ordering the waiver of juvenile jurisdiction over appellant Wolf as a 15 year old, the magistrate held that I.C. § 18–216 was the controlling statute. The magistrate further held that I.C. § 16–1806(1)(a) was an unconstitutional limitation on the jurisdiction of the district court relying on Idaho Const., Art. 5, § 20; *State v. Lindsey,* 78 Idaho 241, 300 P.2d 491 (1956); and Idaho Const., Art. 5, § 13; *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971).

Those orders of the magistrate waiving juvenile jurisdiction were appealed to the district court. Without reaching the merits, the district court remanded the cause for further proceedings in light of an interstate agreement between Idaho and California providing for the transfer of Idaho juveniles to California juvenile treatment facilities. The magistrate's original orders were predicated in part on the lack of adequate facilities in Idaho which would pro-

vide both the maximum security in which to confine violent juveniles and treatment programs which gave a realistic promise for the rehabilitation of such juveniles. Under the interstate agreement, the facilities in California to which Idaho juveniles could be transferred offer both maximum security confinement and treatment for violent juveniles.

■ Following remand from the district court, the magistrate considered that alternative but reaffirmed his original waiver of jurisdiction orders and gave two reasons therefor. The magistrate emphasized the appellants' unsatisfactory prognosis for rehabilitation and the probability they would remain dangerous beyond the age of 21 at which time they would be released from juvenile confinement. Additionally, the magistrate expressed concern that California could refuse to accept the appellants, could return them to Idaho on 15 days notice or cancel the entire agreement on 30 days notice. Should any of these contingencies occur, the problem of the inadequacy of Idaho juvenile facilities would again be posed. We note that under the YRA, I.C. § 16–1806(7), once juvenile jurisdiction is exercised, it is no longer possible to transfer the juvenile for adult prosecution. *State v. Gibbs, supra.* Once a juvenile adjudication is made, double jeopardy attaches to preclude adult criminal prosecution. *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Therefore it is not possible to commit a juvenile to juvenile jurisdiction and. in the event that fails then transfer him to adult jurisdiction. Whitebread & Batey, Transfer Between Courts: Proposals of the Juvenile Justice Standards Project, 63 Va.L.Rev. 221, 227 (1977).

From those orders of the magistrate reaffirming his previous orders waiving juvenile jurisdiction, appeals were taken to the district court. The district court affirmed as to appellant Brooks in a brief opinion. The district court also affirmed as to appellant Wolf, but in so doing rejected the magistrate's constitutional conclusions regarding I.C. § 16–1806. Rather, the district court found that I.C. § 16–1806 had been impliedly repealed to the extent that it was inconsistent with I.C. § 18–216 and thus waiver of jurisdiction as to appellant Wolf was affirmed.

From the decisions of the district court affirming the magistrate orders waiving juvenile jurisdiction, these appeals result. Each appellant assigns as error the magistrate's ruling permitting the prosecutor to testify as to the existence of probable cause without being subject to cross-examination. Each appellant also assigns as error the alleged failure of the magistrate's division of the district court to recognize that appellants have a right to rehabilitative treatment as juveniles. Each appellant assigns the order waiving juvenile jurisdiction as error. Appellant Wolf asserts the order waiving juvenile jurisdiction as to himself as erroneous since he was 15 at the time of the alleged murder. Finally, Wolf assigns as error the magistrate's refusal to grant a continuance so he might seek a writ of prohibition in the district court which would prohibit the magistrate from conducting the waiver proceedings.

## I.

■ We turn first to the question of the necessity of finding probable cause as an element of the waiver hearing. While a number of jurisdictions do require a probable cause finding in conjunction with the waiver process, Rudstein, Double Jeopardy in Juvenile Proceedings, 14 William & Mary L.Rev., 266, 298–99 (1972), Idaho does not. We are not unique in our position. *Breed v. Jones,* 421 U.S. 519, 536 n.16, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). As to a distinction on the requirement of showing probable cause depending upon type of offenses, *see* Institute of Judicial Administration and American Bar Ass'n Joint Comm'n on Juvenile Justice Standards, Transfer Between Courts § 2.2(A)(1) (Proposed Draft 1976).

The function of a probable cause determination at the waiver stage is not clear. It would even appear to be duplicitous since a juvenile will receive a prompt determination of that question regardless of how the waiver issue might be resolved. When a

juvenile court waives jurisdiction, an adult court must still conduct a preliminary hearing at which probable cause must be determined. I.C.R. 51. On the other hand, if the juvenile court does not order jurisdiction waived, a probable cause determination is made by the juvenile court as to whether and how to proceed on the juvenile petition. I.J.R. 17 and 20. While various considerations arguably militate for the incorporation of the probable cause standard at a waiver hearing, such is not required by either the Idaho or federal constitutions.

It is argued, however, that the magistrate did in fact make a probable cause inquiry in this case and found probable cause to believe the appellants murdered Enrico Flory. Whether or not a probable cause inquiry is constitutionally mandated, it may be contended that considerations of fundamental fairness require that the accused be given the opportunity to cross-examine those who present evidence against them. We disagree. The probable cause hearing did no more than establish that the appellants were accused of murder. The nature of the accusation is a relevant factor for the court to consider in deciding whether or not to waive jurisdiction. *In re Ferris,* 222 Kan. 104, 563 P.2d 1046 (1977). Assuming, but not deciding, that it is necessary to establish that fact by the probable cause standard, we are not convinced that appellants had a right, as asserted, to confrontation with the witnesses themselves who inculpated them in the murder nor to cross-examine the prosecutor. As stated in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975):

> The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these formal modes of proof.

420 U.S. at 120, 95 S.Ct. at 866 (footnote omitted).

Measured by the standard of *Gerstein* the proceedings before the magistrate in the instant case were constitutionally sufficient. The only determination by the magistrate was the existence of probable cause to justify transfer to the adult court. That determination could be based on hearsay and need not be tested by cross-examination and confrontation. Note, Sending the Accused Juvenile to an Adult Criminal Court: A Due Process Analysis, 42 Brooklyn L.Rev. 309 (1972).

We note, parenthetically, that section 8(b) of the new I.C. § 16–1806, as amended by the 1977 legislature, authorizes the juvenile court to consider "whether the alleged offense was committed in an aggressive, violent, premeditated or wilful manner." Since this statute was enacted after the murder of Mr. Flory, the ex post facto clauses of the Idaho and federal constitutions prohibit us from applying it to these appeals. We caution, however, that this new statute does not authorize an adjudication or determination of facts beyond the existence of probable cause to believe that a particular crime was committed and that a particular juvenile committed it. It merely authorizes the trial court to *consider* circumstances in aggravation as bearing on the question of whether juvenile jurisdiction should be retained. A determination which exceeds that narrow scope could result in the attachment of double jeopardy and a plea in bar to any proceedings in an adult court. *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

II.

Both appellants contend that the Youth Rehabilitation Act confers on them a statutory right to rehabilitative treatment as juveniles. We reject the argument that the appellants have an unqualified right to treatment as juveniles. I.C. §§ 16–1806 and 18–216 make it clear that not all chronological age juveniles will receive treatment as juveniles. While juvenile treatment programs are intended to divert youthful per-

sons from association with hardened criminals and thereby abort incipient criminal tendencies, the criteria we supplied in *State v. Gibbs, supra,* take cognizance of the fact that some young persons are not susceptible to juvenile rehabilitation programs and such would not benefit themselves, the public to which they must be released at age 21, or other juveniles undergoing treatment and with whom they would be confined. Neither *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), nor any other case to which we have been cited supports appellants' absolutist proposition.

### III.

In *State v. Gibbs, supra,* we announced the following criteria for the guidance of juvenile courts in determining waiver questions:

> Jurisdiction ordinarily is waived when (1) the defendant has acquired such a degree of emotional or mental maturity that he is not receptive to rehabilitative programs designed for children; (2) although the defendant is immature, his disturbance has eluded exhaustive prior efforts at correction through existing juvenile programs; or (3) the defendant is immature and might be treated, but the nature of his difficulty is likely to render him dangerous to the public, if released at age twenty-one, or to disrupt the rehabilitation of other children in the program prior to his release. These areas of consensus provide flexible but definite criteria for waiver of jurisdiction. Each criterion requires that the child's potential for rehabilitation be evaluated in terms of his present state of development and the availability of facilities, programs and personnel capable of providing effective and individualized treatment.

94 Idaho at 916, 500 P.2d at 217 (footnotes omitted).

In the instant case the magistrate found that each of appellants was emotionally and mentally mature and that the prognosis for each appellant under available juvenile rehabilitation programs was unsatisfactory. He also found that each would likely remain dangerous to the public if released at age 21 and in the interim each would likely disrupt the rehabilitation of other juveniles. These findings are supported by the record. Our decision in *Gibbs* furnished notice that findings of that nature would warrant waiver. The magistrate's findings in the instant case are a blend of the first and third criteria, but the fact that there was borrowing from both criteria is not error since our decision in *Gibbs* does not demand rigid adherence to an inflexible formula.

> Our object is not to rigidify the discretionary waiver decision; rather, it is to guide the sound exercise of that discretion in order to implement the legislative purpose and to protect the waiver process from constitutional infirmity.

94 Idaho at 916 n. 36, 500 P.2d at 217 n. 36. The findings of the magistrate adequately met the criteria of *Gibbs* and we find no error.

We turn now to appellant Wolf's assertion that the district court erred in affirming the waiver order since Wolf was less than 16 years of age at the time he allegedly committed the murder. His argument is based on the language of I.C. § 16–1806(1)(a) which he asserts forbids the prosecution of a person between 14 and 16 years of age for a crime.

Since prior to statehood, in one form or another, the legislature has enacted statutes similar to I.C. § 18–201. Until 1972 § 18–201 provided:

> *Persons capable of committing crimes.*—All persons are capable of committing crimes, except those belonging to the following classes: 1. Children under the age of fourteen years, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.

Said § 1 of I.C. § 18–201 was eliminated and I.C. § 18–216 was enacted (see Ch. 31 § 10, 1970 Idaho Sess.Laws) providing:

> *Criminal trial of juveniles barred—Exceptions—Jurisdictional Hearing—Transfer of defendant to probate court.*—1. A person shall not be tried for or convicted of an offense if (a) at the time of the

conduct charged to constitute the offense he was less than fourteen (14) years of age; or (b) at the time of the conduct charged to constitute the offense he was not less than fourteen (14) nor more than seventeen (17) years of age, unless: 1. A court of this state has no jurisdiction over him pursuant to Chapter 18, Title 16, Idaho Code; or 2. The court having jurisdiction pursuant to Chapter 18, Title 16, Idaho Code, has entered an order waiving jurisdiction and consenting to the institution of criminal proceedings against him.

We deem the legislative history of I.C. § 18–216 to show an intent to change the common law which at times authorized the prosecution for a crime of a child as young as seven years of age. The common law rule was that infants under the age of seven were conclusively presumed incapable of crime; those between seven and fourteen were rebuttably presumed incapable; and those 14 or over were presumptively capable. 43 C.J.S. Infants § 204, p. 528–29. The legislative enactment in effect at the time of and applicable to the instant case clearly permitted criminal prosecution as an adult of a child over the age of 14 years. Additional requirements were placed upon the ability to try and convict a child over the age of 14 years in that "the court having jurisdiction pursuant to Chapter 18, Title 16, Idaho Code," must have entered an order waiving jurisdiction and consenting to the institution of criminal proceedings.

The legislature in its wisdom has sought to implement the above statutory intent that a child of the age of 14 or over may be prosecuted as an adult if an order has been entered waiving juvenile jurisdiction and consenting to the institution of "criminal proceedings" against him. As noted by the trial court, such implementing legislation was first enacted in 1955 and carried through in essentially the same form up to the time at issue in the case at bar. *See* I.C. § 16–1806 in its present and prior forms. At the time at issue in the case at bar it provided in pertinent part

*Waiver of jurisdiction and transfer to other courts.*—(1) After the filing of a petition and after full investigation and hearing, the court may waive jurisdiction under the Youth Rehabilitation Act over the child and order that the child be held for adult criminal proceedings when: (a) a child is alleged to have committed an act after he or she became sixteen years of age which would be a crime if committed by an adult; * * *

The learned trial court with admirable restraint stated:

It is apparent that the legislature has not come to grips with what it is doing in this area and recognized that it has two statutes operating in the same field that are inconsistent. Therefore one must attempt to arrive at a rational conclusion arising out of an irrational state of legislative enactment.

We note further that to date the legislature has only recognized its error and acted to remove one-half of the irrational state of the law since it has again amended I.C. § 16–1806 in 1977 to specify how waiver proceedings shall be conducted but only as to a child of fifteen years of age. Rather obviously the same problem to be faced in this case may be faced in the future as to a child of 14 years of age.

We must, nevertheless, attempt to bring some order out of the chaos resulting from the literal language of the two statutory enactments. We hold that the clear intent of the legislature in the enactment of I.C. § 18–216 and its antecedents as gained from the literal language was to define the minimum age at which a child could be tried for and convicted of a criminal offense as if he were an adult. That age is specified as 14 if an order has been entered waiving jurisdiction and consenting to the institution of criminal proceedings against him. We hold that § 16–1806 and its antecedents were intended to implement the statutory provisions of I.C. § 18–216 and an obvious error was committed. We agree with the reasoning of the trial court that *Hayes v. Gardner,* 95 Idaho 137, 504 P.2d 810 (1972), recognized I.C. § 18–216 to be the operative statute in resolving whether a child within the meaning of the Youth Rehabilitation

Act could be tried as an adult. Admittedly, *Hayes* did not consider the discrepancy between the two statutes pointed out here since in *Hayes* the juvenile involved was 17 years of age.

We do not rest our holding on the precise reasoning of the district court wherein he opined that since the two statutes were in conflict, the latest enactment was the best guide to legislative intent. *See Jordan v. Pearce,* 91 Idaho 687, 429 P.2d 419 (1967). The trial court reasoned that since I.C. § 18–216 as enacted in 1972 was the latest legislative indication of intent and thereby impliedly repealed the conflicting provisions of I.C. § 16–1806(1)(a). Being faced with the argument that I.C. § 16–1806(1)(a) had been amended in 1976 and thereby became the latest statement of legislative intent to be used in resolving the conflict between the two statutes, the district court opined that the 1976 amendment to I.C. § 16–1806 had not been concerned with the age provisions for waiver, but only with expanding the crimes for which waiver could be ordered. We agree with his factual view of the 1976 amendment of I.C. § 16–1806 and point out that it is buttressed by the statement of purpose attached to said legislation which reveals the legislative intent to, by amendment, allow waivers of juvenile jurisdiction for misdemeanors wherein previously waivers were allowed only in regard to alleged felonies. Said statement of intent further reveals legislative ignorance of the then state of the statutory law previously enacted by it. *See* Archives and Documents of the 1976 Idaho Legislature, Legislative Council, Statement of Purpose, Senate Bill No. 1421.

As above stated, while we agree with the district court's characterization of the 1976 legislative amendment of I.C. § 16–1806, we do not rest our holding on that basis. *See, however, State, Department of Parks v. Idaho Department of Water Administration,* 96 Idaho 440, 530 P.2d 924 (1974); *Employment Security Agency v. Joint Class A School Dist.,* 88 Idaho 384, 400 P.2d 377 (1965). *But also see Leonard Constr. Co. v. State ex rel. State Tax Commission,* 96 Idaho 893, 539 P.2d 246 (1975).

The district court specifically disagreed with the ruling of the magistrate court that the legislative enactment of I.C. § 16–1806 constituted an unconstitutional legislative invasion of the judicial branch of government under the holdings of *State v. Lindsey,* 78 Idaho 241, 300 P.2d 491 (1956) and *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971). We refrain from expressing an opinion on that holding of the magistrate court and the rejection of it by the district court. Since our holding is reached on other grounds, it is unnecessary to consider and express an opinion upon that constitutional question.

 Appellant Wolf assigns as error the refusal on the part of the magistrate to order a continuance to permit appellant to seek a writ of prohibition in the district court which would have prohibited the magistrate from proceeding with the waiver hearing. The decision to so grant or deny a continuance is within the sound discretion of the magistrate. *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973) *cert. denied,* 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974). We note further that appellant has pointed to no prejudice resulting from the denial of the continuance and that an alternative writ of prohibition was sought in this Court and denied. Although the cause is still at the stage of determining the validity of the order of waiver, exhaustive proceedings have taken place both at the district court level and here. The record demonstrates thorough protection of appellant's rights at all stages with vigorous and capable counsel presenting many and varied arguments and theories which were thoroughly considered by the lower courts.

Orders affirmed.

McFADDEN, J., and SCOGGIN, J. Pro Tem., concur.

DONALDSON, Justice, dissenting.

I dissent from that part of the majority opinion which allows jurisdiction to be waived for the defendant Wolf. The majority states that there are two inconsistent

statutes governing the age at which jurisdiction can be waived, and then holds that I.C. § 18–216, which allows jurisdiction to be waived for Wolf, must control in this conflict.

Wolf was fifteen at the time the crime was committed. Idaho Code § 18–216, in the Criminal Code, bars the criminal trial of juveniles. This section was passed in 1972 and bars outright the criminal trial of persons under fourteen. It also bars the trial of persons age fourteen through seventeen unless the court has waived jurisdiction pursuant to Ch. 18, Title 16 of the Idaho Code.

The Youth Rehabilitation Act (YRA), I.C. § 16–1801 et seq., specifically addresses that issue. The YRA contains the waiver provision in I.C. § 16–1806. Previous to 1976, I.C. § 16–1806 allowed jurisdiction to be waived for persons between sixteen and eighteen years of age for the trial of felonies. In 1976 the statute was amended by deleting the eighteen year limit and also by deleting the felony requirement. 1976 Idaho Sess.Laws 821.

Jurisdiction cannot be waived in the *Wolf* case for several reasons. Specific statutes must govern over more general statutes. *Rose v. State,* 19 Cal.2d 713, 123 P.2d 505 (1942). The YRA is the more specific statute dealing with juvenile jurisdiction. Idaho Code § 18–216 requires waiver to be ordered pursuant to the requirements of I.C. § 16–1806, in which case waiver cannot be ordered for someone under sixteen.

Statutory construction rules give effect at the latest enactment of the legislature. *Jordan v. Pearce,* 91 Idaho 687, 429 P.2d 419 (1967); *State v. Davidson,* 78 Idaho 553, 309 P.2d 211 (1957); *see generally* IA C. Sands, Sutherland Statutory Construction § 23.09 (4th ed. 1972). In this case the legislature last addressed the age issue in the previously mentioned 1976 amendment which deleted the eighteen-year-old limit. That

amendment was to I.C. § 16–1806 and was effective March 30, 1976. Both before and after the amendment, Wolf could not be tried as an adult.

As much as legislative history can come from later enactments, *Immaculate Heart of Mary High School, Inc. v. Anderson,* 96 Idaho 226, 526 P.2d 831 (1974), the legislature considered I.C. § 16–1806 the controlling statute for the age limit for waiver. In 1977 I.C. § 16–1806 was amended to lower the minimum for waiver from sixteen to fifteen. 1977 Idaho Sess.Laws 427.

If the legislative history is at all clear, the conflict must be resolved to say that waiver was not permitted for those under sixteen.

> "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." [citations omitted]. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute.

*People v. Smith,* 44 Cal.2d 77, 79, 279 P.2d 33, 34 (1955).

Because I feel the statutes should be read to bar the waiver of jurisdiction over Wolf, I do not address any of the other issues[1] which the majority opinion raises.

BISTLINE, Justice, dissenting.

I. *Wolf v. State,* No. 12633

On September 3, 1976, a deputy prosecuting attorney filed an amended petition in juvenile court[1] alleging that Steven Wolf, a child under the age of 18 years had committed an offense within Ada County, Idaho, which brought Wolf within the purview of the Youth Rehabilitation Act (YRA). The offense alleged was murder in the first degree, as defined by I.C. § 18–4001. The

---

1. There are also serious equal protection, due process, and ex post facto problems with allowing the statute to be construed to the detriment of the defendant Wolf.

1. For clarity the court of juvenile jurisdiction, which may be either the district court or the magistrate division thereof, is referred to as the juvenile court. The district court did not exercise original jurisdiction, only appellate. The petition was filed in magistrate division.

crime was alleged to have been committed on June 3, 1976, and Wolf was alleged to have acted in concert with three other juveniles. Prior to any adjudicatory hearing, the State moved the juvenile court to waive juvenile jurisdiction and order Wolf proceeded against in criminal court. A waiver hearing was had at which Wolf was represented by the office of the Public Defender of Ada County. The juvenile court, notwithstanding that Wolf at the time of the alleged offense was but 15 years of age, waived jurisdiction and ordered that he be proceeded against as an adult in criminal court. On Wolf's appeal of the waiver order to the district court, the order was affirmed and further appeal to this Court followed.

On the very sparse record[2] brought to this Court, we do observe that at the time the petition was filed Wolf was then within the purview of the Act by reason of prior petitions alleging that he had committed other offenses, to-wit: two charges of kidnapping and one of forcible rape, which offenses he had admitted in adjudicatory hearings. A dispositional hearing on these charges was held after the filing of the instant first degree murder petition, and Wolf was committed to the Department of Health and Welfare, but detained locally so as to be available for the waiver proceeding, the outcome of which is now before us.

It is Wolf's contention on this appeal that his age precludes the State from trying him as an adult for the alleged murder of Enrico Flory. Conversely stated, he insists that his age requires that he be processed as a juvenile within the purview of the Act, and that he must be treated and helped, to be eventually, on reaching the age of 21 years, released from any and all constraints which might otherwise be applied to him for any implication established in the death of Enrico Flory. A reminder of the philosophy which brought about the Act is helpful:

The normal treatment provided by our society for alleged offenders against its

laws is a formal charge of the offense, a formal trial, and, if conviction results from the trial, then punishment or compulsory removal for a time from contact with society. Such offenses are denominated crimes, and the offenders are denominated criminals. Public records are made of such events. But from the earliest times children of certain ages have been deemed by our law to be incapable of crime. And in recent times children of certain ages have been removed from the normal treatments provided for crimes and criminals. This has been in part because of a doubt as to the capacity of children to entertain the vicious will which is an essential element of crime in our jurisprudence, but in much greater part because of a belief that the interests of society are best served by a solicitous care and training of those children shown by circumstances to be in need of such care and training. These concepts in respect to children have evolved into elaborate systems of procedure. In the event a child commits an offense against the law, the state assumes a position as *parens patriae* and cares for the child. Such a one is not accused of a crime, not tried for a crime, not convicted of a crime, not deemed to be a criminal, not punished as a criminal, and no public record is made of his alleged offense. In effect he is exempt from the criminal law.

Such a system for child offenders is provided by our Juvenile Court Act. That act applies to persons under eighteen years of age. It provides that, whenever any person gives an officer of the Juvenile Court information that a child is within the provisions of the act, an investigation shall be made and a "petition", if warranted, filed. Summons is issued to the person having custody of the child. The child may be taken and kept in custody by the Board of Public Welfare. Hearing is had but not in public. The court may place the child on probation or commit him to the Board of

---

**2.** This Court is not furnished with any record of the proceedings which took place at the waiver hearing. We have been furnished a transcript of the arguments of counsel and statements of the court on the appeal presentation in district court.

Public Welfare or to certain named schools, or "Make such further disposition of the child as may be provided by law and as the court may deem to be best for the best interests of the child."

*Pee v. United States,* 107 U.S.App.D.C. 47, 49–50, 274 F.2d 556, 558–59 (1959) (footnotes omitted).[3]

Idaho's first such delinquent child act, from which gradually evolved our present Youth Rehabilitation Act, was passed in 1905. In 1908 Justice Ailshie, speaking for the Court, said:

We shall not go into a discussion of this question, or into any extended consideration of the distinction between this act and its purposes and provisions and that of the general spirit of the criminal law. These questions have all been so extensively, exhaustively and lucidly considered and discussed by so many courts within recent years that we shall content ourselves with a citation of some of the authorities. We may premise our citation of authorities, however, by a general statement that this statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of sixteen from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them from the odium of criminal prosecutions and punishments. Its object is to confer a benefit both upon the child and the community in the way of surrounding the child with better and more elevating influences and of educating and training him in the direction of good citizenship, and thereby saving him to society and adding a good and useful citizen to the community. This, too, is done for the minor at a time when he is not entitled, either by natural law or the laws of the land, to his absolute freedom,—but rather at a time when he is subject to the restraint and custody of either a natural guardian or a legally constituted and appointed guardian to whom he owes obedience and subjection. Under this law the state, for the time being, assumes to discharge the parental duty and to direct his custody and assume his restraint.

*In re Sharp,* 15 Idaho 120, 126, 96 P. 563, 564 (1908). *See also State v. Gibbs,* 94 Idaho 908, 912, 500 P.2d 209, 213 (1972); *Hewlett v. Probate Court,* 66 Idaho 690, 695, 168 P.2d 77, 79 (1946).

In recognition of the fact that there might be some juveniles who, for various reasons, should not be treated as delinquent children in respect to crimes allegedly committed, the legislature provided for the waiving of juvenile jurisdiction. The problem perplexing the other members of the court is caused by I.C. § 18–216 of the criminal code. This statute bars outright criminal trials of juveniles under the age of 14 years; it bars equally criminal proceedings against juveniles in the age bracket of 14 years through 17 years, *unless* the juvenile court has waived its exclusive jurisdiction of those in that age group by complying with the provisions of the YRA, I.C. § 16–1806. In 1976, and effective at the time of the alleged murder of Flory, I.C. § 16–1806, was amended to allow waiver for juveniles under 18, but not less than 16.

The provisions of I.C. § 18–216 of the criminal code are not at all in conflict with the provisions of the YRA, I.C. § 16–1806. It seems to be agreed by all who have now written opinions in this controversy, including the juvenile magistrate and the district judge, that the juvenile court's jurisdiction over juveniles is *exclusive;* it is only a juvenile court which may declare a given child not amenable to the *parens patriae* philosophy of the Act, and thereupon yield that child up to prosecution as an adult in the state's criminal courts. Clearly it was the legislative consensus in 1976, as expressed in I.C. § 16–1806, that a child under the age of 16 years should remain in the jurisdiction of the juvenile court. The juvenile court simply was not authorized to waive jurisdiction of a child falling below that age. I fail to see any way that that simple proposition is confounded by the co-existence of I.C. § 18–216 of the criminal code. It must be remembered that I.C.

---

**3.** The statutes of the District of Columbia are similar to those of Idaho.

§ 18–216 is not a statute which *confers* juvenile jurisdiction on our criminal courts. On the contrary, it is entirely prohibitive in nature, *barring* any such jurisdiction in recognition of and deference to the exclusive jurisdiction placed in the juvenile courts.

The California Penal Code § 26 parallels I.C. § 18–216 in declaring that children over 14 are presumed capable of committing crimes. Nonetheless, the California Supreme Court has ruled that the juvenile courts of that state retain exclusive jurisdiction over children between the ages of 14 and 16:

> The juvenile court exercises exclusive jurisdiction with respect to all minors under the age of 16; it may not transfer such a case to an adult court. (*In re Gladys R.*, supra, 1 Cal.3d 855, 862, 83 Cal.Rptr. 671, 464 P.2d 127). If a minor is 16 or 17 years of age, the juvenile court still retains exclusive original jurisdiction, but the case may under some circumstances be transferred to an adult court.

*T. N. G. v. Superior Court of City & Co. of San Francisco*, 4 Cal.3d 767, 783, 94 Cal. Rptr. 813, 824, 484 P.2d 981, 992 (1971).

It is only by ignoring the clear intent of the Idaho legislature—indeed, only by holding that body to be in "error"—that the majority is able to reach a different conclusion in this case. Clearly, the legislature has told the criminal courts of this state to keep hands off all juveniles *under* the age of 14 years. Equally clear, they are to maintain hands off juveniles *over* the age of 14 unless they are presented with an order from the juvenile court whereby the latter court's jurisdiction is waived pursuant to the provisions of I.C. § 16–1806. It is true that the legislature could have easily barred criminal prosecutions against all juveniles under 18; it could just as easily have permitted criminal prosecutions against anyone over 14. It chose neither course but, instead, left a desirable degree of flexibility in the minimum age at which waiver might be ordered. In 1976, that age was 16. In 1977, the legislature saw fit to lower the minimum waiver age to 15 years. According to the majority, the 1977 amendment was passed because "the legislature has only recognized its error and acted to remove one-half of the irrational state of the law." The majority then proceeds to render the 1977 enactment a nullity by holding that the minimum waiver age has *always* been 14 and not 16, as the legislature mistakenly supposed when it adopted the 1977 amendment attempting to lower that age to 15. By so construing an enactment of the Idaho legislature, the Court turns its back on "the cardinal principle that a statutory provision will not be deprived of its potency if a reasonable, alternative construction is possible." *State v. Gibbs*, 94 Idaho 908, 911, 500 P.2d 209, 212 (1972).

I would hold that the juvenile court and the district court erred in concluding that juvenile jurisdiction over the 15 year old Wolf could be waived in 1976. I see no merit in the State's contention, successfully made in the juvenile court, that I.C. § 16–1806 is an unconstitutional invasion of judicial powers. Had not the State raised such a contention in its effort to cause the juvenile court to fly in the face of a clear legislative prohibition against waiving its jurisdiction, this whole controversy as to which statute should control would not have developed into its present unwarranted proportions.

The prior decisions of this Court have assumed that the age provisions of I.C. § 16–1806 are wholly controlling as to when a juvenile court may waive its exclusive jurisdiction. *Hayes v. Gardner*, 95 Idaho 137, 504 P.2d 810 (1972); *State v. Gibbs*, 94 Idaho 908, 500 P.2d 209 (1972). In addition to this authority, I would hold that the juvenile court's order waiving its exclusive jurisdiction over Wolf cannot stand because of the failure of procedural due process at the trial on that issue, for the reasons set forth in my dissent in the companion case of *Brooks v. State*.

I have also suggested, without success, that although these two cases were argued at the same time in this Court, such was the sum total of the consolidation which was then ordered and is not now appropriate.

This explains my filing of two separate opinions in two separate actions. The issues are not at all identical.

## II. *Brooks v. State*, No. 12634

On September 3, 1976, a deputy prosecuting attorney filed an amended petition in juvenile court alleging that Rory Brooks, a child under the age of 18 years, had committed an offense within Ada County, which alleged offense brought Brooks within the purview of the Youth Rehabilitation Act. The offense alleged was murder in the first degree, allegedly committed by Brooks and three others, all juveniles, on June 3, 1976. Brooks was already under the jurisdiction of the juvenile court at the time the first degree murder petition was filed, having at an adjudicatory hearing admitted to two petitions which charged him with kidnapping and one charge of rape. His dispositional hearing on these latter petitions had not yet been heard at the time of the filing of the murder petition. Mention of the first degree murder petition was made in connection with a motion of then counsel for Brooks that he be allowed to withdraw. Apparently the mother of Brooks had hired private counsel and had run out of funds, so stating when the magistrate asked her. The court authorized the withdrawal of Brooks' counsel as requested. On the mother's statement that she would have to get together with the public defender, a member of the firm then having that contract being present, the court established the indigency of the mother and appointed the public defender to be counsel for Brooks. A continuance was granted in order to allow the firm member then present to become familiar with the case. Brooks was not consulted at all on the appointment of counsel. Nor does the record reflect any concern on the part of the court, of the prosecuting attorney, or of newly appointed counsel, that the office of the public defender was already represent-

ing Steven Wolf, nor of the fact that the petition charging Brooks with first degree murder named yet two other juveniles charged in the same murder, which other two juveniles may or may not also have been represented by the public defender.[4]

Brooks was detained and appeared with counsel before the juvenile court again on the appointed day, September 9, 1976. The prosecution sought and, without objection, obtained a continuance on the waiver petition on the grounds that one of the four juveniles charged had only recently retained counsel, and that "plea negotiations are underway in the matter." The court then proceeded with the dispositional hearing on the kidnapping and rape petitions. This hearing is a part of the record brought up on appeal and cannot be considered as irrelevant in view of the fact that it took place before the very same judge who presided at the waiver hearing eight days later.

The court asked for and received the recommendations of Brooks' probation officer, who had previously worked with Brooks on a six-month informal probation prior to his involvement in the kidnapping, rape, and murder petitions. Based on the period of the informal probation only, her impression was that Brooks "is rehabilitatable." Her recommendation was:

> That he be turned over to the custody of Health and Welfare with the recommendation that he be placed in an appropriate institution that could care for and help him with whatever needs he seems to have at this time. I would strongly recommend that he not be placed in the same place as Steve Wolf. I feel that there would be no rehabilitation on Rory's part if they were placed together.

The court's file contained the probation officer's report and the reports of Dr. Eisenbeiss, a psychologist, and of Dr. Heyrend, a psychiatrist, which reports were ar-

---

4. Concededly any conflict in interest has not been raised as an issue on this appeal. It would seem, however, that assistance of counsel could be greatly impaired where the charge is murder and the accused are multiple. Even though not an issue, the Court should not be oblivious to the obvious, and such awareness should at least intensify our diligence in perusing the record in connection with the claims of error which have been made.

gued by the prosecution and by defense counsel in making their recommendations to the court. The court concluded that Brooks should be placed with the Department of Health and Welfare and transported to the Youth Training Center at St. Anthony, unless by the 27th of September, he were placed by Health and Welfare in some institution outside of Idaho. In view of the pending waiver hearing, however, Brooks was ordered to remain at the Ada County jail.

The waiver hearing was held on September 23. The probation officer again testified as the only witness called on behalf of Brooks. The prosecuting attorney presented the testimony of Doctors Eisenbeiss and Heyrend, who were subjected to cross-examination by counsel for Brooks. A county official, called as a prosecution witness, testified that the Department of Health and Welfare lacked the type of facilities which the doctors believed were required in order to confine and treat Brooks. The only other witness called was the deputy prosecuting attorney then and there presenting the case against Brooks. His testimony, admitted over objection and with no cross-examination permitted, went to the issue of the prosecutive merit of the charges in the petition. The court concluded that Brooks could not benefit, nor could the public, by retaining juvenile jurisdiction over him, and stated that jurisdiction would be waived.

Findings of fact, conclusions of law and order were entered on November 30, 1976, the juvenile court waiving jurisdiction and relinquishing Brooks "to adult criminal court for further proceedings." Brooks appealed the waiver decision to the district court, where argument was presented on April 12, 1977, with the court announcing that it would sustain the entry of the waiver order. A written opinion followed on May 2, 1977. In the interim between the entry of the waiver order and the district court's affirmance of it, Brooks again experienced a change of counsel when the office of public defender was by contract let out to a different firm. Again, the record does not indicate any concern as to Brooks' wishes on the matter or the possible preju-

dice resulting from yet another change of counsel.

The appeal decision was simply that a review of the record adequately demonstrated that the juvenile court findings that Brooks should stand trial as an adult were supported by the evidence. As to the error assigned in the presentation of the testimony of the deputy prosecutor, to which I have briefly alluded above, the district court held:

As announced by the court at the time oral argument was held on the appeal, the method used to show prosecutive merit meets necessary standards.

On further appeal to this Court, Brooks pursues the same assignment of error:

The Juvenile Court erred in not allowing the Sixth Amendment right of confrontation and right of cross-examination with respect to the issue of probable cause and the merit of the State's petition alleging Murder in the First Degree and the District Court erred in failing to recognize such error.

This assignment of error is of a most serious nature and, if sustained, necessitates a reversal of the waiver order. Such claim of error flows from the procedure which the juvenile court authorized in allowing the deputy prosecuting attorney to testify at the waiver hearing and in precluding defense counsel from any cross-examination.

An exacting review of that procedure is in order. At the close of the prosecution's presentation at the waiver hearing, the prosecution moved as follows:

Your Honor, at this time the State would have no further witnesses. We would, again, under the citations provided in *Kent vs. The United States* and the proposed Idaho Juvenile Rules and the Idaho Rules of Criminal Procedure and the Juvenile Rules as they are now in the Idaho Statute and the statutes concerning the YRA, we would move to have myself sworn in the nature of a probable cause proceeding for prosecutive merit for the seriousness of the alleged crime and for—whether the crime is of a personal or—of

a personal nature rather than it is property—whether the crime was committed in an aggressive violent and wilful manner.

The court's response evidenced that a similar request had been made and approved the previous day in the *Wolf* waiver hearing:

THE COURT: All right, then, I'll make the same ruling on that matter I made yesterday. The Court will conduct this portion of the hearing, then, as a probable cause type hearing.

The prosecutor was sworn, and what follows is the totality of his testimony:

At this time, your Honor, the State would propose a complaint or a petition against Rory Brooks based upon the statements of two co-conspirators; one who was present at the time of the alleged offense and one who was in the immediate area and took a part in that criminal activity. Those statements incriminate Rory Brooks as wilfully planning the robbery and death of Enrico Flory. The death being caused by placing a pillow over Mr. Flory's face and asphyxiating him. The motive for the robbery and murder as alleged was money; certain monies were taken from that residence in Boise Ada County. That this was done in a wilful manner by the four juveniles incriminated in the statements of the co-conspirators and was alleged to have happened on June 3rd, 1976. At this point in time, your Honor, the State would rest, if there are no further questions from the Court.

Defense counsel voiced his objection both to the prosecutor's usurpation of the role of witnesses and the court's refusal to allow cross-examination. The court clearly and succinctly stated the reasons which had prompted his ruling which allowed the challenged procedure:

I'm going to make the same ruling on this matter as I did yesterday in the other waiver hearing. Certainly the right of cross-examination is not only vital but is granted by both the Idaho and the United States constitutions. However, at the probable cause stage of the proceeding, I don't feel the right to cross examine is available. This probable cause hearing being conducted at this time here today is not only being made a part of the record of this proceeding, but is being conducted here with both the juvenile's counsel and the juvenile present in court. So I feel at this time the Court will again rule that at this time sufficient probable cause has been shown for the petition that has already been filed with the Court, that being the amended petition of September 3rd, 1976. And the Court will not permit any cross examination of the Prosecuting Attorney at this point.

At the outset there does not appear to be any reason why the prosecutor should have elected to follow such a questionable procedure. The district court made almost that same observation:

I was troubled frankly by the fact that the attorney in the case testified in it. I think that is a—is a poor procedure and one which should—should not occur in the future. It is the type of situation where first an attorney should not testify in a lawsuit that he's handling normally. And second, in this case there's nothing peculiarly known to the attorney that could not have been presented by the investigating officer. But even if it were raised, I don't think it would be—would constitute a basis for reversal; and as you've indicated, the problem is not with that; it is with the procedure itself.

Yet the prosecutor was allowed to testify as to what others had said, absent their statements, and absent any reason whatever for not producing the makers of those statements.

Our inquiry, mandated by the above assignment of error, concerns whether this procedure complied with the statutes of Idaho by which such a waiver hearing is regulated, or whether it violated those statutes and the accepted constitutional standards of procedural due process and fairness. The State, in resisting this appeal, does not contend—as does the majority opinion—that no probable cause hearing is required in Idaho before waiving a juvenile

into criminal court. By thus recognizing the need for a finding of probable cause as an essential element of a waiver hearing, the State shows itself more in tune with the developing law in this area than does the majority opinion. As the Alaska Supreme Court has stated:

> To justify waiver, the children's court judge must find, on sufficient evidence, that "probable cause is established at the hearing for believing that the child committed the act with which he was charged in the petition and which if committed by an adult would constitute a crime and the child is not amendable to treatment provided under [Alaska's youth act] . ."
> [Citation omitted]

*P. H. v. State,* 504 P.2d 837, 842 (1972). *Accord Lujan v. District Court of Fourth Judicial District,* 161 Mont. 287, 505 P.2d 896 (1973); *D. G. B. v. State,* 549 P.2d 94 (Okl.Cr.1976). In like manner, the A.B.A. Juvenile Justice Standards Project, in its recently released document entitled, *Standards Relating to Transfer Between Courts* (hereinafter cited as *Standards*) states the "necessary findings" which are essential to any waiver hearing:

> 2.2 Necessary findings
>
> A. The juvenile court should waive its jurisdiction only upon finding:
>
> 1. that probable cause exists to believe that the juvenile has committed the class one juvenile offense alleged in the petition; and
>
> 2. that by clear and convincing evidence the juvenile is not a proper person to be handled by the juvenile court.[5]

The official comment accompanying the text notes the basic logic of the requirement:

> The presumption in favor of juvenile court jurisdiction should be overcome only in extreme cases. A juvenile against whom probable cause cannot be found should not be considered an extreme case.

In arguing, to the contrary, that no probable cause determination is required at a waiver hearing in Idaho, the majority opinion states:

> The function of a probable cause determination at the waiver stage is not clear. It would even appear to be duplicitous since a juvenile will receive a prompt determination of that question regardless of how the waiver issue might be resolved.

In short, because of what the majority perceives as judicial economy, a juvenile can be waived into adult court without any determination ever having been made as to whether a crime has even been committed, much less that there is probable cause to believe the juvenile committed it. The majority sees no need for the juvenile court to duplicate the probable cause hearing which the juvenile will receive after the waiver— *in adult court.*

The notion that considerations of judicial economy can prevail over the juvenile's right to due process was soundly rejected in *Breed v. Jones,* 421 U.S. 519, 537, 95 S.Ct. 1779, 1789, 44 L.Ed.2d 346 (1975):

> To the extent that evidence concerning the alleged offense is considered relevant, it may be that, in those cases where transfer is considered and rejected, some added burden will be imposed in the juvenile courts by reason of duplicative proceedings.

Moreover, the considerations of judicial economy actually weigh heavily in favor of providing a probable cause determination at the waiver hearing. The A.B.A. was faced with a proposal that the juvenile court simply "assume the prosecutor's factual allegations," and address "only the question of whether a juvenile is a proper person for juvenile court handling." It rejected the proposal precisely on grounds of judicial economy:

> Such a procedure would lead to wasted effort. Inquiry into whether a juvenile is

---

**5.** A "class one juvenile offense," is defined in the *Juvenile Delinquency and Sanctions* volume of the Juvenile Justice Standards Project as a criminal offense for which the maximum sentence for adults would be death or imprisonment for life or a term in excess of twenty years.

a proper person for juvenile court handling must be careful and thorough to be meaningful. That inquiry is useless if lack of probable cause will bar any subsequent proceeding, whether criminal or juvenile. Judicial economy is an important objective. Probable cause is likely to be a factor in waiver proceedings in all juvenile courts, regardless of the applicable statutory provisions.

*Standards, supra,* Commentary of Standards 2.2.[6]

As mentioned above, it was not the State's contention that the probable cause requirement could be dispensed within an Idaho waiver hearing. Rather, the State maintains that the procedure adopted at the waiver hearing satisfied this requirement:

> It was the position of the State (prosecutor) at both hearings and repeated on the record in both hearings that a sworn statement by the prosecuting attorney *concerning the prosecutive merit and upon what probable cause will be based* is sufficient safeguards for the juvenile under the process used in the juvenile court in this case. (Emphasis supplied)

The State urges that the prosecutor's position is supported by *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and in particular, the statement therein that that Court would continue to "adhere to the Court's prior holding that *a judicial hearing is not a prerequisite to prosecution by information.*" 420 U.S. at 119, 95 S.Ct. at 865. (Emphasis supplied) It is true, as the State properly notes and as the majority acknowledges *Gerstein* stands also for the proposition, that a showing of probable cause sufficient to justify pre-trial detention need not be the product of an adversary hearing nor one in which strict rules of evidence are observed. However, our con-

cern in the instant cause is not with pre-trial detention. Today our concern is with a juvenile's objection to lack of procedural due process when he is picked from the ranks of juvenile delinquents, to be placed on trial for his very life. *Gerstein* has very little application in this case.[7]

The argument of the State, and of Brooks, too, must be considered in light of the holdings of the United States Supreme Court, in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and in *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), and the holding of this Court in *State v. Gibbs,* 94 Idaho 908, 500 P.2d 209 (1972). This Court is bound by its prior decisions, until overruled, and it is surely bound by applicable decisions of the Supreme Court of the United States, which it cannot overrule.

The State does place some reliance on *Kent,* saying that "a careful review of that case suggests that no right to confrontation was enunciated in that case." This is not at all remarkable, as that was not there an issue. The due process issue there was a claim that the waiver hearing was invalid because there had in fact been no hearing, and representation by counsel had been rendered ineffective. As set forth in the State's brief, the Supreme Court in *Kent* did say:

> We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons.

*Kent v. United States,* 383 U.S. at 554, 86 S.Ct. at 1053. With regard to the waiver hearing itself, the Supreme Court went on to say:

---

**6.** Additional practical considerations lead to the conclusion that the waiver hearing itself is the proper forum for determining probable cause with regard to the precise crime charged:

> Requiring a probable cause finding at the waiver hearing encourages reliable factual allegations by the prosecutor. A prosecutorial tactic for overreaching the juvenile in plea bargaining is to threaten treatment as an adult. That threat can be particularly effec-

tive when the prosecutor can inflate the potential criminal charge without jeopardizing the case for waiver. Forcing the juvenile to bargain under such circumstances is unfair. *Id.*

**7.** See our discussion of *Gerstein* in *Struve v. Wilcox,* 99 Idaho 205, 579 P.2d 1188 (1978), and *Jacobsen v. State,* 99 Idaho 45, 577 P.2d 24 (1978).

We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; *but we do hold that the hearing must measure up to the essentials of due process and fair treatment. Pee v. United States,* 107 U.S.App.D.C. 47, 50, 274 F.2d 556, 559 (1959).

*Id.* at 562, 86 S.Ct. at 1057. (Emphasis added.)

Procedural due process at a juvenile waiver hearing was likewise the issue before this Court in *Gibbs.* That decision, which followed close on the heels of *Kent,* required us to pass upon Idaho's statutory waiver of jurisdiction provisions. The parallel Washington, D. C. statute, which had been construed in *Kent,* provides:

If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, *after full investigation,* waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offenses if committed by an adult.

D.C.Code § 11–914, (1961) now § 11–1553 (Supp.IV, 1965). (Emphasis added.)

The Idaho Code then provided:

16–1806—*Transfer to other courts.*—1. The court may waive jurisdiction and order a child held for criminal proceedings *after full investigation and hearing* when:

a. a child sixteen [16] years of age or over is alleged to have committed an act prior to having become eighteen [18] which would be a felony if committed by an adult. (Emphasis added.)

In *Gibbs,* a unanimous Court, speaking through Chief Justice McQuade, embraced the principles of law enunciated in *Kent.* First, the *Gibbs* Court observed that I.C. § 16–1806 requires the magistrate to con-

duct "a full investigation and hearing" prior to waiving jurisdiction. *Gibbs,* 94 Idaho at 914, 500 P.2d at 215. This provision of the Idaho Code was then silent as to what type of investigational hearing was required.[8] For direction, this Court immediately turned to *Kent* where the Supreme Court had also addressed a statute which states "the circumstances in which jurisdiction may be waived and the child held for trial under adult procedures, but it does not state standards to govern the Juvenile Court's decision as to waiver." 383 U.S. at 547, 86 S.Ct. at 1050. The Supreme Court concluded that the juvenile court was intended to have considerable latitude within which to reach a waiver decision. Still, the statute was allowed efficacy only by the Supreme Court's authoritative construction that it *assumed* procedural regularity sufficient to satisfy "the basic requirements of due process and fairness." *Id.* at 553, 86 S.Ct. at 1053. At another place, the Supreme Court stated that the statute was required to be "read in the context of constitutional principles relating to due process and the assistance of counsel." *Id.* at 557, 86 S.Ct. at 1055.

With *Kent* well in mind, Chief Justice McQuade wrote for this Court in *Gibbs:*

In *Kent v. United States* the Supreme Court declared that "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." The most important right is that to treatment as a juvenile rather than as an adult. If retained under Y.R.A. jurisdiction in this case, Gary might have been subject to rehabilitative care and treatment until his twenty-first birthday; but if convicted in district court he might be sentenced to fifteen years in the penitentiary on each of two charges. This difference in possible dispositions reveals that the magistrate's decision to waive jurisdiction in this case was "critically important" in the sense denoted by the Supreme Court. As expressed in *Kent, such a decision must culminate from proceedings which "satis-*

---

8. It has since been amended, 1977 Idaho Sess. Laws, ch. 165.

fy the basic requirements of due process and fairness, as well as * * * the statutory requirement of a 'full investigation.'"

*Id.*, 94 Idaho at 914, 500 P.2d at 215. (Emphasis added.) In short, it is the responsibility of state courts,

> when the discretionary waiver statutes of their respective jurisdictions are subjected to constitutional challenge, [to] fashion the controlling criteria.

*Id.* at 916, 500 P.2d at 217. The necessity of an authoritative construction in order to preserve the validity of our sparsely worded waiver statute was so obvious that it was accorded but footnote recognition:

> Our object is not to rigidify the discretionary waiver decision; rather, it is to guide the sound exercise of that discretion *in order to implement the legislative purpose and to protect the waiver process from constitutional infirmity.*

*Id.* n.36. (Emphasis added.) The clear and unequivocal holding of *Gibbs* is identical to that of *Kent:* The waiver statute both assumes and requires procedural due process.

The 1977 Legislature provided, by way of statute, the criteria or standards for waiver hearings which until then had only been supplied by this Court in *Gibbs.* After providing that on motion for waiver of jurisdiction an order should be entered setting down a hearing for a time and date certain, the juvenile court was directed "shall order a full and complete investigation of the circumstances of the alleged offense . ." I.C. § 16–1806(3) as amended by S.L.1977, ch. 165, p. 428. Furthermore, the juvenile court, in considering whether or not to waive its exclusive jurisdiction over the child was directed to consider "whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner." I.C. § 16–1806(8)(a) & (b). These amendments, though not yet enacted at the time of Brooks' waiver hearing, parallel this Court's criticism in *Gibbs* of a juvenile court proceeding in which there had been only "a description of the offenses alleged and a vague reference to previous offenses." 94 Idaho at 916, 500 P.2d at 217. While the Court in *Gibbs* was at pains to caution that an adjudicatory hearing should take place where waiver was being sought—thereby foreseeing the result the U. S. Supreme Court was to reach in *Breed v. Jones, supra,* namely, that jeopardy attaches once such a hearing takes place—the Court assumed, as a matter of course, that the proper function of the juvenile court was to reach a "determination of whether a public offense had been committed and whether there was probable cause to believe Gary [Gibbs] committed it." *Id.* at 914, 500 P.2d at 215. Without affording such a minimum of due process, the *Gibbs* court could not have upheld the constitutionality of what was then I.C. § 16–1806.

The remaining issues are two: (1) Does procedural due process include the right in the juvenile to demand that the testimony at a waiver hearing come from first-hand witnesses or may it be the hearsay recapitulation of a deputy prosecuting attorney; and (2) if the latter is acceptable, then is there a right in Brooks' counsel to examine the one witness who purported to give the only "evidence" inculpating Brooks in the alleged murder of Enrico Flory?

The answers are readily available. In criminal proceedings, no person may be deprived of life or liberty without due process of law. Procedural due process is required by the Idaho Constitution, art. 1, § 13, and by the Fourteenth Amendment to the United States Constitution. We have recognized here in Idaho that probable cause *to detain* a person, pending his trial, shall only be upon a finding of probable cause based upon *substantial evidence.* Where a showing of right-to-detain probable cause is all that is required, our criminal rules allow for the finding to be based upon hearsay, provided that "there is a substantial basis for believing the source of the hearsay to be credible." Even then, the magistrate may require personal appearances of witnesses for a magistral examination. I.C.R. Rule 4.

The review sought by Brooks, however, is not merely as to whether there was probable cause to detain him. He was already detained. Rather, the review was to deter-

mine whether there was probable cause to believe a crime had been committed and, if so, whether Rory Brooks was the person who had committed it. Such a determination forms a basic element of a hearing which had for its purpose to determine if Brooks should be tossed into the mainstream of the adult criminal world and be put on trial for his very life. To suggest that the determination could rest on second hand testimony from the very person who is engaged in the competitive enterprise of prosecution is abhorrent to notions of due process and fundamental fairness. The suggestion was soundly rejected by the Court of Criminal Appeals of Oklahoma under facts almost identical to the present case:

> the prosecutor called two witnesses: the first testified about appellant's maturity and intelligence; the second testified about his previous contacts with the juvenile justice system and his amenability to rehabilitation within that system. The nature of the circumstances which led to appellant's being brought before the court in this case were alluded to only once during the proceedings. The prosecutor, at the close of his evidence, made a statement to the court repeating the bare allegation made in the petition which initiated the juvenile case. In that statement the prosecutor also informed the court of the names of the witnesses who would be called to support the factual allegation should the juvenile be certified to stand trial as an adult. The prosecutor also states, "I believe we could make a prima facia case." (Tr.59) A representation made by the prosecutor to the Juvenile Judge that sufficient evidence exists to connect the juvenile to the crime alleged, however soundly based that representation may be, is insufficient to support a finding by the Juvenile Judge of prosecutive merit.

D. G. B. v. State, 549 P.2d 94, 95 (Okl.Cr. 1976).

The unfairness of the procedure employed below is further compounded when one looks to *the content* of the prosecutor's testimony. Not only was the prosecutor's testimony pure hearsay, it was hearsay as to accusations by Brooks' alleged accomplices. We have, then, the anomaly that the prosecutor's hearsay testimony suffices to establish probable cause in a situation where the direct testimony itself would not have sufficed:

> There exists no substantial reason or logic which would justify compelling a juvenile to face the rigors and the consequences of the preliminary phases of an adult criminal prosecution upon the uncorroborated testimony of an accomplice when he cannot be bound over for trial or ultimately convicted solely upon that evidence. Therefore, the burden of requiring the State to come forth at the certification hearing with the necessary corroborative evidence is certainly outweighed by the potential consequences and stigma which may befall a juvenile who is certified upon the uncorroborated testimony of an accomplice but who cannot be bound over for trial or convicted when the State has no evidence corroborative of the accomplice's testimony.

*Matter of J. S.,* 556 P.2d 641, 643 (Okl.Cr. 1976). Such a ruling does not place an unreasonable burden upon the prosecution, for, as the same court went on to say:

> certainly, this will not preclude justice from being served in the appropriate instances when the reliability and trustworthiness of an accomplice's testimony is corroborated by evidence and the guilt and consequences thereof befall the deserving individual, being either juvenile or adult.

*Id.* I would hold, therefore, that the procedure adopted by the juvenile court in permitting the prosecutor to testify as to the hearsay accusations of Brooks' alleged accomplices, was insufficient to establish probable cause and amounted to a violation of Brooks' rights under the Idaho Constitution and under the juvenile waiver statutes as authoritatively construed by this Court in *Gibbs.*

Finally, we must address the question of whether or not Brooks was deprived of his

right to effective assistance of counsel and his right to confront his accusers. The United States Supreme Court, in discussing the "full investigation" requirements of the D. C. juvenile waiver statute, announced:

there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does not.

*Kent v. United States,* 383 U.S. at 554, 86 S.Ct. at 1054. As to the content of the requirement that a juvenile has a right to the effective assistance of counsel, the Supreme Court had this to say:

These rights are meaningless—an illusion, a mockery—unless counsel is given an opportunity to function.

The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is the essence of justice.

383 U.S. at 561, 86 S.Ct. at 1057.

In order to insure that these rights do not become meaningless, the A.B.A.'s Juvenile Justice Standards Project specifies the following as essential components of the waiver hearing:

E. The prosecuting attorney should bear the burden of proving that probable cause exists to believe that the juvenile has committed a class one juvenile offense and that the juvenile is not a proper person to be handled by the juvenile court.

F. The juvenile may contest the waiver motion by challenging, or producing evidence tending to challenge, the evidence of the prosecuting attorney.

G. The juvenile may examine any person who prepared any report concerning the juvenile which is presented at the waiver hearing.

H. All evidence presented at the waiver hearing should be under oath and subject to cross-examination.

*Standards, supra,* Standard 2.2.

It is undoubtedly true, as suggested by the State, that the rights addressed above are not applicable to a detention probable cause hearing. Nevertheless such rights do obtain in Idaho at preliminary hearings where a magistrate determines whether a crime has been committed and whether there is reason to believe that the accused may have committed it. At such hearings, counsel for the accused do participate and, by right, are entitled to cross-examine the prosecution's witnesses. *Stockwell v. State,* 98 Idaho 797, 573 P.2d 116 (1977).[9]

While it is true that Brooks was provided counsel for the waiver hearing, the juvenile court's rulings were such that counsel might as well have stayed home. In that way, they might have spared themselves the frustration of being present and yet being denied the right to examine the two co-conspirators who allegedly gave the statements inculpating Brooks, and denied also the right to cross-examine the deputy prosecuting attorney as to the basis for his believing, if he did, the hearsay statements of the two co-conspirators, who, after all, with the advice of private counsel, were willing to and did enter into plea bargaining. There is no trial attorney worth his salt who could not have had a heyday with such a situation as that. It is not that the missing statements of the missing witnesses might not be absolutely true. Nor is it that cross-examination would for certain have revealed weaknesses in their testimony, or have revealed the untenability of the prosecutor's situation in vouching for the integrity and veracity of two alleged co-murder-

---

**9.** Our Constitution and statutes require that an accused cannot be placed on trial for a felony without an indictment or on information after preliminary examination. This constitutional right to a preliminary hearing can be waived.

That the legislature sees the child's waiver hearing as being of even more fundamental importance is evidenced from the fact that there is no corresponding waiver provision in the juvenile context.

ers. Rather it is a complete breakdown of the judicial system, and that is something this Court cannot tolerate and should not perpetrate.

Taking the child out of the juvenile court is, as the Supreme Court of the United States remarked in *Kent,* a result of tremendous consequences. Those consequences are indeed staggering where the proposal is that the child be placed on trial for his life.[10] All of which is not to say that Brooks should not have been transferred to adult criminal court—but is to say that he should not have been transferred by a decision based on evidence which did not substantially even establish that Enrico Flory had been murdered, or that Brooks was a perpetrator of that crime. It is not inconceivable that Brooks is today waived out of juvenile court to stand trial for a murder which may never be legally established as having taken place.

Procedural due process is lacking, and the waiver decision should be reversed for a new hearing on that issue. Brooks, like Kent, may be destined to languish in jail until he is twenty-one while the Idaho courts[11] and inevitably the federal courts determine one after the other whether he has received the constitutional due process to which all, the good, the bad, the innocent and the guilty are alike entitled. How much better to have provided it in the first instance.

10. The "critical importance" of the outcome of the waiver hearing cannot be overestimated:
There is convincing evidence that most juvenile court personnel, and the judges themselves, regard the waiver of jurisdiction as the most severe sanction that may be imposed by the juvenile court. Not only is the juvenile exposed to the probability of severe punishment, but the confidentiality and individuality of the juvenile proceedings is replaced by the publicity and the normative concepts of penal law; the child acquires a public arrest record which, even if he is acquitted, will inhibit his rehabilitation because of the opprobrium attached thereto by prospective employers, if convicted as an adult, the child may be detained well past his twenty-first birthday; he may lose certain civil rights and be disqualified for public employment. Moreover, if sent to a typical adult prison, he is likely to be subjected to physical, and even sexual, abuse by older inmates, and his chances for rehabilitation are likely to decrease significantly.
Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisited,* 43 Ind. L.J. 583, 586–87 (1968).

11. In this case, the initial decision was made in the magistrate division of the district court, appealed to the district court, remanded to the magistrate division, then back to district court, and eventually here, where it was argued in September of 1977, a full year after the time that Brooks and Wolf were charged with murder, and a hearing sought on the prosecution's decision to pursue them as adults.

If this Court is not going to adopt a rule which will eliminate some of the delay, the legislature should consider intervening. If magistrates are to preside at waiver hearings, and I see no reason why they should not, there should be a direct appeal to this Court. Magistrates regularly decide controversies of the most serious nature, such as is a waiver hearing, or any matter involving the best interests and welfare of children.

Additionally, the legislature having by the 1977 amendment to I.C. § 16–1806 put an end to any dispute as to whether the alleged offense must be inquired into at the waiver hearing, the juvenile court should enter into a full investigation and hearing with the understanding that where waiver is ordered, some other judge or magistrate will preside in further criminal proceedings. It is only required, as noted in *Breed v. Jones, supra,* that prior to any waiver hearing there must not take place anything in the nature of an *adjudicatory* hearing.