# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 47401 & 47402

| | |
|---|---|
| In the Interest of:  JOHN DOE, A Juvenile ) Under Eighteen Years of Age. ) STATE OF IDAHO, ) ) Plaintiff-Respondent, ) ) v. ) ) JOHN DOE (2016-26), ) ) Defendant-Appellant. ) ) | Opinion Filed:  July 10, 2020 Melanie Gagnepain, Clerk |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County.  Hon. Susan E. Wiebe, District Judge.  Hon. Brian D. Lee, Magistrate.

Order of the district court, on intermediate appeal from the magistrate court, waiving juvenile court jurisdiction, <u>affirmed</u>.

Fisher Law Office, PLLC; Steven Fisher, Boise, for appellant.  Steven Fisher argued.

Hon. Lawrence G. Wasden, Attorney General; Jeffrey D. Nye, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

---

HUSKEY, Chief Judge

N.C. appeals from the order of the district court, on intermediate appeal from the magistrate court, waiving juvenile jurisdiction and allowing N.C. to be prosecuted as an adult in adult criminal court.  On appeal, N.C. alleges the district court erred in affirming the decision of the magistrate court because the magistrate court's waiver order constituted an abuse of discretion.  N.C. argues the magistrate court:  (1) misinterpreted two of the guiding statutory factors when it decided to waive N.C. into adult court; (2) made findings of fact that were not supported by substantial and competent evidence; and (3) used the probable cause standard of proof, instead of the beyond a reasonable doubt standard, to support its waiver order.  The magistrate court correctly exercised its discretion in applying the statutory factors guiding its

1

waiver decision and its factual findings were supported by substantial and competent evidence. Accordingly, the district court did not err in affirming the magistrate court's order waiving juvenile court jurisdiction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged N.C. with twelve felony and three misdemeanor counts of possession of sexually exploitative material for other than a commercial purpose after law enforcement found explicit pictures of females who appeared to be under the age of eighteen on N.C.'s cellular phone. After finding that N.C. came within the preview of the Juvenile Corrections Act (JCA), the magistrate court released N.C. to the custody of his parents under a conditional release program. As one of the conditions of release, the magistrate court ordered N.C. to refrain from social media use and not possess or use a smart phone or any other device to access the Internet.

N.C. subsequently violated the terms of release by possessing a smart phone, engaging in communications through an Internet-enabled device, and using a PlayStation 4 gaming console to communicate with individuals online. The magistrate court revoked N.C.'s pretrial release and ordered that he be detained in protective custody in the Southwest Idaho Juvenile Detention Center (SIJDC). The State searched N.C.'s new smart phone. This search resulted in the discovery of additional images of child pornography, and the State charged N.C. with an additional thirty felony and two misdemeanor charges for possession of sexually exploitative material. The State filed a motion to waive N.C. into adult court for both cases.

The magistrate court again released N.C. to the custody of his parents under similar conditions as his previous pretrial release. Again, N.C. violated his pretrial release conditions by engaging in online communications through the social media application Snapchat and possessing components to build a computer that would be able to access the Internet. Consequently, the magistrate court revoked N.C.'s pretrial release and ordered his recommitment to the SIJDC. The magistrate court held a hearing on the State's motion to waive N.C. into adult court for both cases. After hearing testimony from eleven witnesses, the magistrate court granted the State's motion and waived juvenile jurisdiction over N.C. N.C. appealed to the district court. Subsequently, the district court affirmed the magistrate court's waiver of juvenile jurisdiction. N.C. timely appeals.

2

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate court's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do not review the decision of the magistrate court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

A court's decision to waive a juvenile into adult court will be upheld on appeal so long as it was not an abuse of discretion. *In re Doe*, 147 Idaho 243, 247, 207 P.3d 974, 978 (2009). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal

words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id*. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

## III.

## ANALYSIS

On appeal, N.C. alleges the magistrate court's waiver decision constituted an abuse of discretion and, therefore, the district court erred by affirming the order. N.C. argues the magistrate court abused its discretion by: (1) misinterpreting two statutory factors guiding its decision to waive N.C. into adult court; (2) making findings of fact that were not supported by substantial and competent evidence; and (3) applying the probable cause standard of proof, instead of the beyond a reasonable doubt standard, to justify its waiver order. The State argues the district court correctly concluded the magistrate court's findings of fact were supported by substantial and competent evidence and the findings justified the decision to waive juvenile court jurisdiction. Additionally, the State contends the appropriate exercise of the court's discretion is all that is necessary for a waiver; thus, the State need not establish that the waiver is appropriate under either the probable cause or the beyond a reasonable doubt standard.

A. **The District Court Did Not Err in Affirming the Magistrate Court's Order Waiving Juvenile Jurisdiction Because the Magistrate Court's Findings Are Supported by Substantial and Competent Evidence**

Under the JCA, juvenile courts have exclusive, original jurisdiction over any juvenile who engages in an act or omission in the state of Idaho that "is a violation of any federal, state, local or municipal law or ordinance which would be a crime if committed by an adult." I.C. § 20-505(2). Such jurisdiction may only be retained until the juvenile reaches twenty-one years of age. I.C. § 20-507. However, an adult criminal court may obtain jurisdiction over a juvenile when the juvenile court enters an order waiving jurisdiction. I.C. §§ 20-508; 20-509. A juvenile court may waive jurisdiction if the juvenile is at least fourteen years of age and committed an act that would be a crime if committed by an adult. I.C. § 20-508(1)(b).

The decision to waive a juvenile into adult court is a discretionary decision governed by statute. *In re Doe*, 147 Idaho at 250, 207 P.3d at 981 (holding magistrate court's waiver decision is discretionary and must be analyzed under I.C. § 20-508(8)). When deciding whether to waive

4

jurisdiction, the magistrate court shall consider: (1) the seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities; (2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) whether the alleged offense was against persons or property, with greater weight being given to offenses against persons; (4) the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living; (5) the juvenile's record and previous history of contacts with the juvenile corrections system; and (6) the likelihood that the juvenile will develop competency and life skills to become a contributing member of the community by use of the facilities and resources available to the court. I.C. § 20-508(8)(a)-(f). The court's determination that the juvenile is not a fit and proper subject to be dealt with under juvenile court law may be based on any one or a combination of statutory factors. I.C. § 20-508(g). Like the court's decision as to waiver itself, the amount of weight to be given to each factor is discretionary. *Id.*

The magistrate court found all statutory factors governing its waiver decision weighed in favor of waiving juvenile jurisdiction. On direct appeal, the district court found substantial and competent evidence supported the magistrate court's findings for five of the six statutory factors. The district court did not find that substantial evidence supported the magistrate court's determination that N.C.'s maturity favored waiver of juvenile jurisdiction.

On appeal to this Court, N.C. asserts the district court erred by finding substantial and competent evidence supported the magistrate court's findings for three of those five factors: (1) the seriousness of the offense and whether the protection of the community requires isolation of N.C. beyond that afforded by juvenile facilities; (2) N.C.'s record and previous history of contacts with the juvenile corrections system; and (3) the likelihood that N.C. will develop competency and life skills to become a contributing member of the community by use of the facilities and resources available to the court. In response, the State contends the district court did not err in finding substantial and competent evidence supported the magistrate court's findings for the three factors N.C. challenges on appeal. Further, the State alleges the district court erred when it found substantial and competent evidence did not support the magistrate court's finding that N.C.'s maturity weighed in favor of waiver of juvenile jurisdiction.

5

**1. The seriousness of the crime and whether the protection of the community requires isolation of N.C. beyond that afforded by juvenile facilities**

N.C. alleges the magistrate court's finding that the seriousness of the crime and protection of the community requires isolation beyond that afforded by juvenile facilities was not supported by substantial and competent evidence. N.C. admits the crimes he is charged with are serious, but argues the juvenile facilities provide sufficient isolation to protect the community.

According to N.C., the juvenile facilities provide adequate isolation under the plain language of I.C. § 20-508(8)(a); therefore, there is no reason to waive juvenile jurisdiction and proceed in adult criminal court. N.C. contests the magistrate court's interpretation of the statutory factor based on what he argues is the plain meaning of "isolation" and "beyond" as used in subsection (8)(a). N.C. contends the word "isolation" only refers to whether the particular facility provides adequate physical isolation, and does not contemplate or relate to the issues of treatment, supervision, post-incarceration compliance, or the issue of time. N.C. also asserts the magistrate court incorrectly defined "beyond" by interpreting it as a matter of temporal concern.

Alternatively, N.C. argues that if subsection (8)(a) permits the magistrate court to consider the temporal limits of the juvenile corrections system, there is no evidence in the record that indicates he would need treatment and monitoring beyond his twenty-first birthday because neither the clinical director for the Idaho Department of Juvenile Corrections (IDJC) nor the psychosexual evaluator that evaluated N.C. testified to this conclusion.[1]

Idaho Code § 20-508(8)(a) requires the magistrate court to consider "[t]he seriousness of the offense and whether the protection of the community requires isolation of the juvenile beyond that afforded by juvenile facilities" when determining whether to waive juvenile jurisdiction. N.C.'s assertion that the plain language of this factor restricts the magistrate court's consideration to only the physical resources of the juvenile facility, while ignoring the temporal restrictions inherent in a juvenile court's jurisdiction, is in conflict with Idaho Supreme Court precedent.

In *Doe*, a twelve-year-old juvenile faced charges of attempted first degree murder, battery with intent to commit a serious felony, and forcible penetration by use of a foreign object. *In re*

---

[1]    Although the clinical director testified that the Idaho Department of Juvenile Corrections had an appropriate facility to house and treat high-risk juvenile sexual offenders, he acknowledged that he had not evaluated N.C. or reviewed all documentation in N.C.'s case.

6

*Doe*, 147 Idaho at 244-46, 207 P.3d at 975-77. Against recommendations from the psychologist appointed to evaluate Doe and a waiver report prepared by the Juvenile Probation Department, the magistrate court waived Doe into adult court, finding five of the six statutory waiver factors favored waiving juvenile jurisdiction. *Id.* at 247-51, 207 P.3d at 978-82. On appeal, the Court held the magistrate court's determination that the protection of the community required isolation of Doe beyond that afforded by the juvenile facilities pursuant to I.C. § 20-508(8)(a) was supported by substantial and competent evidence because: (1) the psychologist appointed to evaluate Doe testified that Doe would likely need treatment beyond his release from IDJC, and (2) the juvenile justice system loses jurisdiction once the juvenile turns twenty-one years of age. *Id.* at 251, 207 P.3d at 982. Thus, due to the limited temporal jurisdiction of the juvenile justice system and "[b]ecause Doe would likely require structured treatment beyond his release from the DJC," the Court held the magistrate court did not err in concluding that retaining Doe in the juvenile system would not adequately protect the community. *Id.*

Therefore, when the magistrate court analyzes whether the protection of the community requires isolation beyond that provided by juvenile facilities, it may consider whether the juvenile facilities will be able to adequately isolate and treat the juvenile for a sufficient period of time. Accordingly, the district court did not err by affirming the magistrate court's consideration of the temporal limitations of juvenile jurisdiction under this factor.

Next we turn to whether substantial and competent evidence supported the magistrate court's finding that the seriousness of the offenses and the protection of the community required isolation of N.C. beyond that afforded by the juvenile facilities. Regarding the seriousness of the offenses, the magistrate court found:

> The seriousness of these offenses is profound. This, while I can appreciate the argument that there aren't direct victims in this case, or as a result of these kinds of charges, the charges that have been filed against [N.C.], this Court perceives that the persons that are exploited in the images that [N.C.] is alleged to have possessed are absolutely direct victims of this crime.
> This impact for those people, those children, I wonder if it could be overstated.
> No doubt it is as profound as almost anything could be to any person. And it must be impossible to calculate the long-term ramifications for those children and the people who care about those children and how that unfolds in their lives.

N.C. does not dispute that the forty-two felony counts of possession of sexually exploitative material are serious. If perpetrated by an adult, the possession of sexually exploitative material

7

carries with it the possibility of ten years in state prison for each felony count. I.C. §§ 18-1507(2)(a); 18-1507(3). Thus, substantial and competent evidence supports the magistrate court's finding that the offenses N.C. is charged with are serious.

Regarding whether N.C. required isolation beyond that afforded by the juvenile facilities, the magistrate court found "the isolation and monitoring of therapy and treatment necessary to address the alleged criminal misconduct of [N.C.] to only 21 years of age is wholly inadequate, taking into account the seriousness of his alleged criminal misconduct and his need for therapy and treatment and monitoring." This finding is supported by substantial and competent evidence.

The screening team tasked with determining whether N.C. posed such a risk to the community concluded that community-based treatment was inappropriate and unanimously recommended his commitment. The screening team found N.C. posed a risk to the community under every factor in Idaho Juvenile Rule 19: risk of violence; risk due to the sexual nature of the offenses; risk for reckless disregard for the property rights of others; and risk due to a pattern of misdemeanor or felony criminal behavior. Additionally, the screening team found there was a high risk that N.C. would reoffend.

Further, although the psychosexual evaluator believed it was possible for N.C. to receive the necessary sex-offender treatment in a secure juvenile residential treatment facility, the evaluator also determined that N.C. posed a "significant threat to the basic rights and safety of others," presented many limitations regarding his responsiveness to treatment,[2] and had a high risk of reoffending sexually within two years when compared to other juveniles with sexual behavior problems (even assuming engagement in sex-offender treatment and compliance on probation). The evaluator noted N.C.'s lack of recognition or acceptance of responsibility related to the sexual offenses and emphasized a "primary focus of treatment and probation should be limiting [N.C's] potential victim access. [N.C.] should not have any unsupervised contact of any kind with anyone two years or younger than himself," with peer-aged females, or with anyone who is considered vulnerable or easily manipulated.

---

[2]     N.C.'s limitations included: antisocial peer associations; poor academic history; rebellious personality characteristics; poor management of sexual urges; unstable substance abuse issues; and lack of recognition of committing a sexual offense.

Additionally, both juvenile probation officers tasked with evaluating N.C. and preparing a waiver report explicitly recommended the magistrate court waive juvenile jurisdiction. The waiver report stated the juvenile probation officers believed N.C. would need years of treatment that may extend beyond the jurisdictional limitations of the juvenile justice system. At the waiver hearing, one of the probation officers expanded upon this concern and testified that the IDJC generally releases individuals from commitment upon turning eighteen, sometimes against the recommendations of juvenile probation officers, and that he was aware of only one individual currently on juvenile probation that was approaching his twentieth birthday. Consequently, because N.C. was already seventeen at the time of the waiver hearing, the officer testified that he believed N.C. would not get the length of commitment and treatment that he would need within the juvenile system.

> The juvenile probation officer's report concluded:
>
> When taking into account the gravity of the violations, the methods of obtaining them and the willful continuance of crimes and violations while pending actions in this case, the treatment needs required to properly reduce the risk to the community may exceed that offered by the Idaho Department of Juvenile Corrections.

The probation officer's conclusion was made before N.C. violated his pretrial release by obtaining a second phone on which he downloaded additional pornographic images of minors and subsequently resulted in another petition being filed against N.C. which charged thirty new felonies. At the waiver hearing, one probation officer testified that this additional case "only strengthens my opinion that a waiver is necessary."

The potential for the length of N.C.'s period of commitment within a juvenile detention facility to be of a relatively short duration was supported by additional testimony. At the waiver hearing, the IDJC clinical supervisor testified that for juveniles detained within the facility that houses older juveniles committed for sexual offenses, the average period of commitment is between twelve and nineteen months.

Thus, although there may have been conflicting evidence regarding whether the protection of the community favored waiving juvenile jurisdiction, conflicting evidence does not mean there was not substantial and competent evidence to support the magistrate court's factual finding. *See In re Doe*, 147 Idaho at 247-51, 207 P.3d at 978-82 (finding substantial and competent evidence supported court's determination under this factor, despite recommendations from waiver committee and psychologist that juvenile court retain jurisdiction). Instead, the

9

weighing of conflicting evidence is left to the magistrate court. *Id.* We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991); *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Therefore, this Court will not second-guess the determination of the weight given to the evidence by the magistrate court.

Considering the evidence before the magistrate court, there was substantial and competent evidence concerning the gravity of the offenses, the heightened risk N.C. posed to the community, and the likelihood that N.C. would require structured treatment beyond that provided within the IDJC and beyond his twenty-first birthday. Accordingly, the district court did not err in affirming the magistrate court's findings under this factor.

### 2. N.C.'s record and previous history of contacts with the juvenile corrections system

N.C. alleges the district court erred in affirming the magistrate court's determination that N.C.'s juvenile record and previous history of contacts with the juvenile corrections system favored waiving juvenile jurisdiction. N.C. argues that because his contacts with the juvenile corrections system occurred over a short period of time, he does not have the relevant "record" or "previous history" as articulated in I.C. § 20-508(8)(e) and, thus, the magistrate court's finding that this factor favored waiving juvenile jurisdiction was not supported by substantial and competent evidence.

Idaho Code § 20-508(8)(e) provides the magistrate court shall consider "[t]he juvenile's record and previous history of contacts with the juvenile corrections system" when determining whether to waive juvenile jurisdiction. The statute's plain language provides that the magistrate court shall consider the juvenile's record with the juvenile corrections system. I.C. § 20-508(8)(e). The statute does not include any language that would restrict the magistrate court's consideration of the juvenile's record to a certain period of time.

After consideration of N.C.'s multiple and rapid contacts with the juvenile justice system, especially those while on pretrial release, the magistrate court found this factor weighed in favor of waiving juvenile jurisdiction:

> [N.C.] gratefully does not have a lengthy--well, it depends on what, I suppose what you think of as lengthy, but does not have a pattern of interacting with the Juvenile Corrections system that goes back some number of years.

10

It's relatively short, his interactions with the Juvenile Corrections System, but the rapidity of his interaction once he began is unusual. And the fact that those contacts, those alleged violations of law continued to come, even when being very closely monitored, both in these cases and in others, is very troubling to this Court and suggests a person who is inamenable [sic] to rehabilitation and treatment and suggestion.

This is very true as it relates to the violations of release. The Court set conditions of release on [N.C.] and attempted to manage him in the community rather than detention, pending the resolution of the many criminal cases. And that effort was not successful . . . .

N.C.'s argument that the district court erred by affirming the magistrate court's finding under this factor fails because the finding that N.C.'s juvenile record and previous history of contacts with the juvenile corrections system favor waiver of juvenile jurisdiction is supported by substantial and competent evidence. Over the course of approximately fifteen months, N.C. had a multitude of contacts with the juvenile corrections system stemming from cases involving petit theft, possession of a controlled substance, grand theft by receiving a stolen firearm, and possession of sexually exploitative material.

Not only were several petitions involving criminal charges filed against N.C., but both times the magistrate court released N.C. on supervised pretrial release, he violated the terms of the release. These violations included accessing social media by using his brother's cellular phone and utilizing a gaming device to exchange messages with others over the Internet. N.C. continued the same criminal behavior for which he was already facing charges by possessing a second phone on which he downloaded numerous images of child pornography, leading to thirty additional felony and two misdemeanor charges for possession of sexually exploitative material. As stated in the social investigation report, this conduct demonstrated N.C.'s "continued criminality of felony level offenses while under supervision and purview of the court." Similarly, the psychosexual evaluator noted concern with N.C.'s behavior while on pretrial release, and elevated N.C.'s risk level to high "due to his quick return to viewing child and deviant pornography on stolen cellphone #2, even though he was on house arrest and was under investigation."

Further, while there is evidence in the record that N.C. performed well while in a juvenile detention facility, his time there was not discipline free. While in the facility, N.C. solicited another juvenile to post on N.C.'s social media accounts for him once the juvenile was released.

11

Therefore, even while in the detention facility, N.C. demonstrated a desire to access the Internet and the willingness to take affirmative steps to do so.

The magistrate court correctly considered N.C.'s quick escalation in criminal behavior and commission of offenses while being closely monitored by juvenile probation. Consequently, the magistrate court found that N.C.'s history with the juvenile corrections system favored waiving juvenile jurisdiction. This finding is supported by substantial and competent evidence and, accordingly, the district court did not err by affirming the magistrate court's findings under this factor.

> **3.      The likelihood that N.C. will develop competency and life skills to become a contributing member of the community by use of facilities and resources available to the court**

N.C. alleges the district court erred by affirming the magistrate court's determination that the likelihood that N.C. will develop competency and life skills to become a contributing member of the community by use of facilities and resources available to the court supported waiving juvenile jurisdiction. N.C. argues the magistrate court did not properly analyze this factor because it failed to consider the availability of treatment within the juvenile system and N.C.'s record within the structure of juvenile detention. Specifically, N.C. contends no evidence, opinion, or otherwise, supports a finding that N.C. is not suited for treatment within the juvenile system. Instead, N.C. alleges his character, history of model compliance in juvenile detention, and his openness and full participation in substance abuse and psychosexual evaluations demonstrates a high likelihood of developing competency and life skills to become a contributing member of the community within the juvenile corrections system.

Idaho Code § 20-508(8)(f) provides that the magistrate court shall consider "the likelihood that the juvenile will develop competency and life skills to become a contributing member of the community by use of facilities and resources available to the court." The magistrate court found consideration of this factor provided the least weight in its decision to waive juvenile jurisdiction.

The plain language of I.C. § 20-508(8)(f) only provides that the magistrate court consider the "facilities and resources available to the court." There is no language limiting the magistrate court's consideration under this factor to only the facilities and resources of the juvenile court. As the magistrate court's waiver decision is to determine whether the juvenile should be waived into adult court and no language in the statute constricts the juvenile court's consideration under

I.C. § 20-508(8)(f) to only juvenile court, it is appropriate for the court to consider the facilities and resources of both the juvenile and adult court systems under this factor.

Here, the magistrate court found N.C. "is clearly capable and intelligent--he can manage his behaviors but simply chooses not to." The magistrate court expanded upon this finding:

> [N.C.] clearly, if he chooses, understands social systems and understands how to navigate them for his benefit and the benefit of others.
> I'm absolutely not finding that the interventions of Juvenile Probation and/or Juvenile Corrections would not be effective in helping [N.C.] develop competency and life skills. I wonder if any such intervention is even necessary. [N.C.] is competent. He does possess life skills. But for his criminality, or alleged criminality, he would not be only a modestly performing 17-year-old in our society. He would be performing at a high level.
> So, you know, I'm not really sure that in this case that is very helpful to the Court in making a decision about whether or not it's appropriate to waive jurisdiction under the Juvenile Corrections Act and instead bind [N.C.] over to be handled under the adult criminal justice system.
> But that being said, I do find that he would be amenable to that to the extent it's necessary at all.

The district court held the magistrate court's weighing of this factor was a matter of discretion, not to be disturbed on appeal. Further, the district court held that N.C.'s previous encounters with the juvenile corrections system and the likelihood he would require additional supervision and treatment beyond the age of twenty-one provided substantial and competent evidence to support the magistrate court's order to waive jurisdiction under this factor.

The magistrate court considered this factor, but gave it the least weight in its waiver determination. Although the magistrate court suggested the juvenile corrections system could aid N.C.'s further development, it ultimately determined it was appropriate to waive N.C. to the adult criminal system. Despite hearing conflicting evidence, the magistrate court's finding that N.C. possesses the competency and life skills to be a productive member of the community is supported by substantial and competent evidence. On the one hand, evidence was presented that N.C. was largely compliant and successful during his time within the juvenile detention facility, previously performed well in school, pursued productive extracurricular activities, and benefitted from a supportive family life. On the other hand, N.C.'s record in juvenile detention shows he was disciplined for forbidden communication with another juvenile by giving that juvenile a note in which N.C. solicited the juvenile's assistance in accessing N.C.'s social media accounts. Additionally, the psychosexual evaluation noted that N.C.'s test-taking behavior indicated some deception in aspects of the examination. This conflicting evidence does not mean there was not

13

substantial and competent evidence supporting the magistrate court's conclusion regarding this factor.

Finally, N.C.'s assertion that no evidence, opinion, or otherwise, supports the finding that he will likely need the supervision and treatment provided by a corrections system beyond what can be provided by the juvenile corrections system is incorrect. As discussed above, two juvenile probation officers recommended the magistrate court waive juvenile jurisdiction precisely because they believed N.C. would need treatment and supervision beyond what the juvenile system could offer, including monitoring past N.C.'s twenty-first birthday. Further, although a clinical director from the IDJC testified generally that the juvenile corrections system has the capacity to house and treat high-risk juvenile sex-offenders, he also testified that IDJC attempts to release these juveniles from detention facilities after approximately twelve to nineteen months to greater facilitate community re-integration. In contrast, an officer from the Idaho Department of Correction testified that the adult criminal system has a complex array of options available to those convicted of sexual offenses, including much longer supervision, generally for periods between five and fifteen years. And, as previously discussed, substantial and competent evidence supports the magistrate court's finding that the protection of the community favors longer supervision than the juvenile corrections system can provide.

Therefore, substantial and competent evidence supported the magistrate court's finding that the resources available within the juvenile system would not provide N.C. with the competency and life skills due to his unsuccessful encounters with the juvenile corrections system and the likelihood he would require additional supervision and treatment beyond the age of twenty-one. Accordingly, the district court did not err in affirming the magistrate court's decision on this factor.

### 4. N.C.'s maturity as determined by considerations of his home, environment, emotional attitude, and pattern of living

The State argues the magistrate court's finding that the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living favored waiving juvenile jurisdiction was supported by substantial and competent evidence. Therefore, the State alleges the district court erred by concluding that the magistrate court's finding that this factor favored waiver was erroneous.

Idaho Code § 20-508(8)(d) provides the magistrate court shall consider "the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and

pattern of living." The district court held there was not substantial and competent evidence to support the magistrate court's determination that N.C. was mature and capable, instead finding that "the record overwhelmingly shows N.C.'s immaturity and impulsiveness." Accordingly, the district court concluded the magistrate court's finding that this factor favored waiver was erroneous.

A district court reviews a magistrate court's waiver decision for an abuse of discretion. *In re Doe*, 147 Idaho at 247, 207 P.3d at 978. A court sitting in an appellate capacity should not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304. Although there was conflicting evidence in the record pertaining to N.C.'s maturity, the record included evidence of N.C.'s previous success in scholastic and extracurricular activities, supportive home environment, and ability to perform well within the detention facility. This provides substantial and competent evidence to support the magistrate court's finding that N.C. had a level of maturity that favored waiver of juvenile jurisdiction. The district court did not give appropriate deference to the magistrate court's findings related to this factor and accordingly the district court erred in this finding

## C. The Decision to Waive a Juvenile Into Adult Court is Discretionary

N.C. alleges the State is statutorily required to prove the need to waive juvenile court jurisdiction beyond a reasonable doubt pursuant to I.J.R. 15(h). As a result, N.C. argues the district court erred by affirming the magistrate court's application of the lower probable cause standard of proof in its decision to waive juvenile jurisdiction. In response, the State contends that because the magistrate court's decision to waive juvenile jurisdiction is discretionary, the magistrate court's proper exercise of discretion establishes the justification for waiver. Thus, the magistrate court did not need to find probable cause, let alone proof beyond a reasonable doubt, to properly waive jurisdiction.

The JCA provides, "[a]fter the filing of a petition and after full investigation and hearing, the court may waive jurisdiction under the juvenile corrections act over the juvenile and order that the juvenile be held for adult criminal proceedings." I.C. § 20-508(1). "The hearing upon the motion to waive jurisdiction shall be held in the same manner as an evidentiary hearing upon the original petition and shall be made part of the record." I.C. § 20-508(8).

15

Idaho Code § 20-519 and I.J.R. 15 describe how evidentiary hearings under the JCA should be held. Unlike waiver hearings, which determine whether the juvenile court should waive its jurisdiction, evidentiary hearings adjudicate whether the juvenile committed the alleged offense. I.C. §§ 20-508; 20-519. Idaho Code § 20-519 and I.J.R. 15 explain procedurally how waiver hearings should be conducted. Thus, I.C. § 20-508's statement that waiver hearings "shall be held in the same *manner* as an evidentiary hearing" refers to the procedures by which the waiver hearing must be conducted. The statement does not impose any standard relevant to the decision to be made at the two very different proceedings.

Idaho Juvenile Rule 15(h) provides that "the state has the burden of proving beyond a reasonable doubt that the juvenile has committed acts bringing the juvenile within the purview of the J.C.A." This section imposes a standard of proof upon the court's determination of the guilt of the juvenile but by its plain language, it does not apply to waiver hearings. Therefore, N.C.'s argument that pursuant to I.J.R. 15(h), the magistrate court must find the State proved that waiver of juvenile jurisdiction was appropriate beyond a reasonable doubt is not supported by law.

Although the magistrate court in this case made reference to a probable cause standard as part of its waiver decision, such a standard also does not apply to a discretionary waiver decision. In *Wolf v. State*, 99 Idaho 476, 583 P.2d 1011 (1978), the Idaho Supreme Court held that "[w]hile a number of jurisdictions do require a probable cause finding in conjunction with the waiver process, Idaho does not." *Id*. at 479, 583 P.2d at 1014 (citation omitted). The Court emphasized a probable cause determination at the waiver hearing would be unclear and duplicitous since a juvenile would receive a probable cause determination promptly after the waiver hearing either in juvenile court pursuant to I.J.R. 17 and 20 or in adult court at a preliminary hearing. *Id.* at 480, 583 P.2d at 1015.

Additionally, the Idaho Supreme Court has since emphasized that the magistrate court's decision to waive juvenile jurisdiction is a discretionary one, *see In re Doe*, 147 Idaho at 247, 207 P.3d at 978, not a determination with a required burden of proof. Thus, the magistrate court's findings related to each factor must only be supported by substantial and competent evidence. *See id.* at 254, 207 P.3d at 985 (affirming magistrate court's decision because, although there was evidence to support that Doe's needs could be successfully addressed within the juvenile system, there was also substantial evidence to support magistrate court's decision to

16

waive Doe into adult court). Accordingly, because the magistrate court's waiver determination is discretionary and its findings were supported by substantial and competent evidence, the district court did not err by affirming the magistrate court's order waiving juvenile jurisdiction.

## IV.

## CONCLUSION

A magistrate court's waiver decision is a discretionary decision that must be supported by substantial and competent evidence. The magistrate court appropriately considered the statutory factors guiding its decision to waive juvenile jurisdiction and its factual findings were supported by substantial and competent evidence. Therefore, the order of the district court, on intermediate appeal affirming the magistrate court's decision waiving juvenile court jurisdiction, is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.